IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                                          CR-05-493-KI

                       Plaintiff,                                      OPINION AND ORDER

     v.

JUAN RAMON CERROS-CHAVEZ,

                 Defendant.


KING, Judge:

     The matter before the court is Defendant's motion for a <u>Franks</u> hearing (Doc. # 19).

Defendant is charged with Possession with Intent to Distribute a Controlled Substance (50 grams

or more of actual methamphetamine) in violation of 21 USC 841(a)(1) and (b)(1)(A)(viii).  He

was arrested on September 6, 2005, pursuant to a warrant to search his person, vehicle and

residence.  According to defendant, the affidavit in support of the warrant application, prepared

by Multnomah County Deputy Sheriff Tim Wonacott (Deputy Wonacott), and signed by a

Clackamas County magistrate judge on September 2, 2005, contains inaccuracies and

misstatements and omits exculpatory information.

     The court conducted an evidentiary hearing on July 31, 2006.  For the reasons that follow,

defendant's motion for a <u>Franks</u> hearing is DENIED.

<u>FACTS</u>

Between July and August 2005, Multnomah County police officers made six undercover purchases of methamphetamine from Luis Guerrero-Lopez (Lopez) as part of an ongoing drug distribution investigation. During the course of the investigation, defendant Cerros-Chavez was identified as a probable supplier of drugs to Lopez. Deputy Wonacott and other officers observed defendant and his blue Ford Explorer at Lopez's residence on multiple occasions, and at the scene of undercover purchases on at least two occasions.

On July 28, 2005, at 1730 hours, Lopez agreed to sell undercover Multnomah County Officer Scott Timms (Officer Timms) methamphetamine. Lopez told Officer Timms he needed to meet a friend at his house prior to meeting Officer Timms. At 1800 hours, Deputy Wonacott, who was conducting ground surveillance at Lopez's residence, observed "an unknown male Hispanic" in a blue Ford Explorer arrive at Lopez's residence. Deputy Wonacott later identified this man to be defendant. Deputy Wonacott observed Lopez and defendant load an box into defendant's blue Ford Explorer. He also observed several unknown white males he believed to be methamphetamine users, and a woman named Desiree Washington, come and go from Lopez's property. At approximately 1900 hours Lopez met Officer Timms at an Ashley's restaurant (Ashley's). Lopez explained that he was late getting there because one of his workers was stopped by the police and her car was impounded. At 1958 hours, Deputy Burton observed defendant leave Lopez's property in his blue Ford Explorer and return home.

On August 12, 2005, Lopez agreed to meet Officer Timms at 1630 hours at Ashley's. Defendant's blue Ford Explorer pulled onto Lopez's property at 1557 hours. Lopez arrived shortly thereafter, and met defendant in the driveway near the barn structure. Gresham Police

Page -2- OPINION AND ORDER

Officer Jim Danner (Officer Danner) observed defendant and Lopez moving in and out of a barn for 20 to 25 minutes. At 1620 hours Lopez called Deputy Timms to say he was on his way to the controlled buy location. Moments later, at 1623 hours, Deputy Christian saw Lopez carrying a cannister out of the barn to a vehicle he immediately drove to meet Officer Timms. At 1645 hours Lopez provided Officer Timms with two ounces of methamphetamine, which he removed from a container Officer Timms described as a peanut jar. At approximately 1707 hours Multnomah County Deputy Sheriff Sean Christian (Deputy Christian) observed Lopez return to his residence, get out of the vehicle he drove to meet Officer Timms, and walk into the barn with a handful of money. Defendant was waiting in the barn area. At 1743 hours defendant left in his blue Ford Explorer.

On August 19, 2005, Officer Timms arranged to meet Lopez for another controlled purchase of methamphetamine. Lopez told Officer Timms he needed to meet a friend at 1500 hours and would be ready to meet Officer Timms at approximately 1530 hours. Meanwhile, Deputy Wonacott saw defendant leave his residence in his blue Ford Explorer at 1520 hours and arrive at Lopez's residence at 1550 hours. Deputy Wonacott observed defendant make contact with Lopez, and noted that he appeared to be doing something under the hood of his vehicle. Deputy Wonacott observed defendant remain at Lopez's residence after Lopez left. At 1615 hours, Lopez arrived at the controlled buy location in a light blue Ford Escort. He told Officer Timms that he could get two more ounces of methamphetamine later that day from his friend.

A short while later Lopez called Officer Timms and indicated he was leaving his residence to meet his partner to get the methamphetamine and that he would meet Officer Timms before 1900 hours. Meanwhile, Officer Wonacott observed defendant leave Lopez's residence,

Page -3- OPINION AND ORDER

go to an apartment complex on SE Harney Drive, and then return to his own residence. At 1830

hours Lopez called Deputy Timms and told him to meet at a Denny's restaurant (Denny's) across

from Clackamas Town Center. At 1845 hours Multnomah County Deputy Sheriff Lars Snitker

(Deputy Snitker) observed defendant walk out of his residence carrying a white plastic grocery

bag. At 1909 hours surveillance units observed both defendant and Lopez in the Denny's parking

lot. When Officer Timms arrived he saw defendant and Lopez parked next to each other. Lopez

told Officer Timms to wait where he was while Lopez got into the passenger seat of defendant's

blue Ford Explorer. The vehicle drove to the northwest corner of the parking lot. Lopez then

exited the vehicle carrying a white plastic bag from which he took out baggies of

methamphetamine he immediately sold to Officer Timms. From a different vantage point

Deputy Christian observed the same scene, and saw defendant hand Lopez a white plastic bag

while defendant's vehicle traveled through the parking lot.

On August 30, 2005, Officer Timms arranged to meet Lopez at Ashley's at 1530 hours to

pay for four ounces of methamphetamine Lopez previously provided Officer Timms, and to

obtain four more ounces. When Lopez arrived he only had three ounces of methamphetamine.

He told Officer Timms that it was his friend's birthday so he was unable to get another ounce.

Officer Timms later confirmed that defendant's birthday was August 30, 1975.

On September 2, 2005, Deputy Wonacott obtained a search warrant to search, among

other things, the person of defendant, his blue Ford Explorer, and his residence. On September

6, 2005, defendant was stopped by a marked patrol car on Highway 224 in Carver, Oregon. He

was immediately taken into custody and transported by patrol car to Lopez's residence, where

officers were staging a large-scale search of the residence, vehicles, and people. Upon arrest,

defendant asked to speak to an attorney.  According to the police report, he was not advised of his rights until after being transported to Lopez's residence, where all detained persons were read the search warrant and <u>Miranda</u> warnings as a group.  The police report indicates that defendant said he understood his rights.

A search of defendant's blue Ford Explorer uncovered 8 to 10 ounces of methamphetamine in the center console.  According to the police report, Deputy Wonacott told defendant that he understood he wanted to speak to an attorney, but perhaps he would reconsider speaking with police first.  Defendant then told Deputy Wonacott that he had purchased the blue Ford Explorer two weeks prior.  Deputy Wonacott told defendant he knew that wasn't true because law enforcement had been watching him drive the vehicle for approximately one month.  Defendant then said he had purchased the vehicle one month prior.

DISCUSSION

Defendant alleges the affidavit in support of the search warrant used to arrest him and search his car and residence contained omissions, inaccuracies and misstatements that "were at a minium reckless in nature."  At the hearing, defendant put on five witnesses in an effort to make a substantial preliminary showing that he was entitled to a <u>Franks</u> hearing.  The government objected to defendant's presentation of evidence, arguing that even if the court agreed with defendant's allegation of errors in the affidavit, omitting alleged misstatements and including alleged omissions would not affect the probable cause determination.

**I.    Standards**

In <u>Franks v. Delaware</u>, 438 U.S. 154, 164-65 (1978), the Supreme Court held that intentionally or recklessly submitting false statements in a warrant affidavit violates the Fourth

Amendment.  A defendant is entitled to a <u>Franks</u> hearing if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." <u>Id</u>. at 155-56.  To meet his burden, the defendant "should point out specifically the portion of the warrant affidavit that is claimed to be false" and submit a statement of supporting reasons.  <u>Id</u>. at 171.  Allegations of negligence or innocent mistake will not suffice.  <u>Id</u>.

If perjury or reckless disregard for the truth is established by a preponderance of the evidence, the court must set the "false" material aside and determine whether the "remaining content is sufficient to establish probable cause." <u>Id</u>. at 156.  If not, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." <u>Id</u>.

Courts have employed a similar analysis when a defendant alleges the warrant affidavit is fraught with material omissions.  In <u>United States v. Pace</u>, 898 F.2d 1218, 1232 (7th Cir. 1990), the Seventh Circuit considered whether the lower court erred by refusing to hold a <u>Franks</u> hearing based on defendant's contention that a material omission in the supporting affidavit rendered a warrant invalid.  The court found that "[t]he rule of [<u>Franks</u>,] prohibiting a police officer from deliberately or recklessly presenting false material information in a warrant application, also prohibits the officer from deliberately or recklessly omitting material information from the application." <u>Id</u>. at 1232.  The defendant in <u>Pace</u> argued that the affidavit in support of a warrant to search his residence omitted to mention that a search of his friend's residence, subsequent to an informant's tip that defendant had entered with a suspicious bag of white powder, did not turn up any drugs.  The defendant also alleged that the officer who authored the affidavit did not know

Page -6- OPINION AND ORDER

the name of the informant, or whether he was reliable.  The Seventh Circuit held that the lower

court did not err by declining to hold a <u>Franks</u> hearing because (1) the search of the friend's house

did uncover empty bags containing cocaine residue; and, (2) defendant was only speculating as to

whether the affiant knew the name of the confidential informant, so his request was nothing more

than "a mere desire to cross-examine."  <u>Id</u>. at 1228; <u>see also</u> <u>Franks</u>, 438 U.S. at 171 (stating that

to mandate an evidentiary hearing, "the challenger's attack must be more than conclusory and

must be supported by more than a mere desire to cross-examine"); <u>see also</u> <u>United States v.</u>

<u>Chavez-Miranda,</u> 3-6 F.3d 973, 979 (9th Cir. 2002)(bare assertion of deliberate omissions falls

short of the preponderance of the evidence that <u>Franks</u> requires).

## II.    Analysis

According to defendant, the affidavit is fraught with six material omissions or

misstatements.

First, defendant contends Deputy Wonacott's reference, on page one of the affidavit, to

"an unknown male Hispanic" that he had seen during surveillance of Lopez's residence prior to

July 28, 2005, should be stricken because the government did not provide any discovery of

events prior to July 28, 2005.  At the hearing Deputy Wonacott testified that the government did

not provide the report of Officer Timms' first controlled buy from Lopez, during which defendant

was seen on Lopez's property, because the government was not seeking to prosecute anyone

based on that transaction.

Defendant fails to make a substantial preliminary showing that this statement was false,

or that Deputy Wonacott recklessly disregarded the truth by stating that the "unknown male

Hispanic" he saw on July 28, 2005 at Lopez's residence had been seen there before.  Further,

defendant has made no showing that striking this reference would affect the probable cause determination.

Second, defendant claims that page two of the affidavit omits information about his activities on July 28, 2005, while at Lopez's residence, that are exculpatory in nature, such as loading a window air conditioner in a box into the back of his vehicle. In his memorandum in support of his motion for a <u>Franks</u> hearing defendant also states that he believes law enforcement officers observed defendant engaging in other exculpatory activities as well that would be presented a the hearing. However, at the hearing, in response to defense counsel questioning Deputy Wonacott testified that he saw defendant load a box into his blue Ford Explorer, but did not see him loading a bicycle or firewood.

Defendant fails to make a substantial preliminary showing that Deputy Wonacott deliberately or recklessly omitted to mention in the affidavit that he saw defendant load a box into his vehicle on July 28, 2005. In any event, loading an air conditioner box into a vehicle is not a clearly exculpatory activity. Nor has defendant shown that surveillance officers observed him engaging in "additional exculpatory activities" not included in the affidavit. Thus, even if Deputy Wonacott had stated in the affidavit that defendant was seen loading a box into his vehicle while at Lopez's residence on July 28, 2005, this information would not affect the probable cause determination.

Third, defendant contends page five of the affidavit omits to mention that during the 20 or 25 minutes defendant and Lopez were observed moving in and out of the barn structure on Lopez's residence, August 12, 2005, Deputy Christian saw Lopez carrying a laptop or something similar.

Page -8- OPINION AND ORDER

Defendant's allegation does not rise to the level of a substantial preliminary showing that Deputy Wonacott deliberately or recklessly omitted to mention the laptop. In any event, the presence of a laptop is not plainly exculpatory, and would not have affected the probable cause determination.

Fourth, defendant claims the words "barn," "garage," and "shop" were misleadingly used interchangeably in the affidavit to give the reader the impression that Lopez and defendant were secreting themselves in a private location to avoid detection of their activities. Defendant argues that Deputy Wonacott should have included a description or map of the barn structure in the affidavit because part of the structure was wide open, and the absence of this fact in the affidavit implies that all the men's activities took place within a closed structure.

Defendant has made no showing that Deputy Wonacott's failure to include a description or map of the barn structure was deliberate or reckless, or that this information would have affected the probable cause determination. The proximity in time to the controlled buy on August 12, 2005 raises a substantial inference that Lopez and defendant were conducting drug-related activities in and around the barn structure on that date. A map of the barn structure would have no bearing on the activities observed in open view.

Fifth, defendant contends the audio tape of the conversation between Officer Timms and Lopez on August 19, 2005 does not support the statement in the affidavit that Lopez told Officer Timms he needed to meet his "partner" to get the methamphetamine to sell to Officer Timms that night. Defendant contends Deputy Wonacott's use of that word in the affidavit was "potentially reckless." Yet, defendant has made no showing that Deputy Wonacott listened to the audio tape of Officer Timms' conversation with Lopez. To the contrary, Officer Wonacott testified that

information he attributes to Officer Timms in the affidavit was garnered by verbal reports or by

reviewing Officer Timms' written reports.  Thus, defendant cannot show that Deputy Wonacott

knowingly and intentionally, or with reckless disregard for the truth, included false information

in the affidavit.  Nor has defendant shown that the probable cause determination would be

affected by omission of the word "partner" from the affidavit.

Sixth, defendant contends Deputy Wonacutt omitted to mention the "significant distance

[defendant] lives from [Lopez]."  Defendant argues that the fact the two men live 30 minutes

apart is material to whether the inference in the affidavit that Lopez would meet with defendant

to obtain drugs prior to meeting with Deputy Timms for the undercover purchases was accurate.

Specifically, defendant points to this statement on page seven of the affidavit:

> At about this time [1415 hrs] Deputy Timms advised me that he had received a return
> phone call from LOPEZ advising Deputy Timms that LOPEZ needed to meet a friend at
> 1500 hrs and would be ready to meet Deputy Timms at approximately 1530 hrs.

According to defendant, the fact defendant wasn't seen leaving his residence that day until 1520

hours "implies that [Lopez] may be just a little late in meeting with Deputy Timms for the

controlled buy."

Indeed, Lopez was a little late; he did not meet Deputy Timms until 1615 hours.  The

affidavit indicates that defendant was seen leaving his residence at 1520 hours and arriving at

Lopez's residence at 1550 hours.  Thus, although Deputy Wonacott did not explicitly state that

defendant lived 30 minutes from Lopez, this fact is plainly discernable from the timeline

provided in the affidavit.  Accordingly, I find defendant has made not showing that Deptuy

Wonacott deliberately or recklessly omitted to mention the distance between defendant and

Lopez's residences.

Page -10- OPINION AND ORDER

<u>CONCLUSION</u>

For the reasons given above, defendant's motion for a <u>Franks</u> hearing (Doc. # 19) is

DENIED.

IT IS SO ORDERED.

Dated this __3rd___ day of August, 2006.

                                    ___/s/ Garr M. King_____
                                    Garr M. King
                                    United States District Judge